

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Boyet Stevens
County Judge
Morris County

Hon. Geo. E. French
County Attorney
Morris County
Daingerfield, Texas

Gentlemen:

Opinion No. 0-1252
Re: Constitutionality of S.B. 200 Acts
of the 46th Leg., i.e. Texas Bed-
ding Law and application of law to
submitted factual situation.

We are in receipt of your letter in which you
request an opinion of this Department as to whether or
not S.B. 200, Acts of the 46th Legislature, which is
Article 4476a, Vernon's Annotated Civil Statutes, is
constitutional, and whether or not the following type
of work is within the purview of said statute.

"Mr. Bascom Martin of Omaha, Texas, has a
portable renovating machine which he uses to
renovate mattresses for the citizens of this
locality. He carries this machine on a trail-
er attached to his automobile. He has no mat-
tress factory nor plant. When he secures work
he goes upon the premises of the person who
hires him and does all of the renovating work
there. The customer himself furnishes all ma-
terial, whether new or second hand. Mr. Martin
furnishes nothing but his machine and labor,
which is all performed on the premises of the
customer. Mr. Martin has been advised by the
Board of Health that in their opinion he will
have to establish himself in a permanent place,
i.e., build a house, before he can obtain a

Hon. Boyet Stevens and Hon. Geo. E. French, page 2

permit under Senate Bill 200.

"It occurs to me that since Mr. Martin
does no work except on the premises of his cus-
tomers, using material furnished solely by the
customer, that he and his work do not come
within the purview of the Act. The bill, en-
acted under the police power, no doubt has as
its purpose the prevention of disease by super-
vision of plants where mattresses are taken and
repaired without the owner having an opportuni-
ty of observing the work or knowing the kind
and character of materials used in his mattress,
but it would seem going too far to require a
permit of a man who goes upon another's premises
to repair his mattresses, paint his house, mow
his lawn or fix the screen door. To require
Mr. Martin to build a mattress factory before
he can obtain a permit and carry on his trade
would do nothing more nor less than put him out
of business, destroy the means of livelihood
of he and his wife and children, and possibly
place him on the rolls of the W.P.A."

The following pertinent provisions of Article
4476a, supra, are quoted for the purposes of this opin-
ion:

"Sec. 2. (a). All bedding shall bear se-
curely attached thereto and plainly visible,
a substantial white cloth tag upon which shall
be indelibly stamped or printed with black ink,
in the English language, a statement showing
whether new materials or second-hand materials
have been used in filling such bedding, and type
or grade of cotton and all other materials used
in filling mattress to which attached when new
materials are used, with approximate percentages
when mixed; what germicidal treatment, if any,
has been applied to the materials or to the bed-
ding; the date of such germicidal treatment;
the number of the permit of the person manufact-
uring the bedding; and the number of the permit
of the person applying such germicidal treatment,
if any."

Hon. Boyet Stevens and Hon. Geo. I. French, page 3

"Sec. 2. (e). Every article of bedding manufactured for resale containing second-hand material, shall bear, securely sewn thereto on all four sides of the tag, attached to both sides of the article of bedding, a substantial white cloth tag four (4) by eight (8) inches in size, upon which shall be indelibly stamped or printed in red ink, in the English language, in plain type not less than one-half (1/2) inch in height, stating: "second-hand material'".

"Sec. 3. No person shall manufacture, repair or renovate into bedding or batting, using discarded materials obtained from dump-grounds, junk yards, or hospitals within or without the State of Texas."

"Sec. 4. All second-hand materials, or portions thereof, for resale, shall be subjected to a germicidal treatment currently recommended by the Department."

"Sec. 6. (a). No person shall engage in the business of manufacturing, repairing or renovating any bedding unless he shall have obtained a permit from the Department.

"(b). No person shall be considered to have qualified to apply an acceptable germicidal process until such process has been registered with and approved by the Department, after which a numbered permit shall be issued by the Department. Such permit shall expire one year from date of issue and shall thereafter be annually renewed at the option of the permit holder upon submission of proof of continued compliance with the provisions of this Act and the regulations of the Department. Every person to whom a permit has been issued shall keep such permit conspicuously posted on the premises of his place of business near the treatment device. Holders of permits to apply germicidal treatment shall be required to keep an accurate record of all materials which have been subject-

Hon. Boyet Stevens and Hon. Geo. E. French, page 4

ed to germicidal treatment, including the
source of material, date of treatment, and name
and address of the buyer of each, and such rec-
ords shall be available for inspection at any
time by authorized representatives of the De-
partment."

"Sec. 7. (a). No person shall manufacture,
renovate, sell or lease or have in his posses-
sion with intent to sell or lease in the State
of Texas, any bedding covered by the provisions
of this Act, unless there be affixed to the tag
required by this Act by the person manufactur-
ing, renovating, selling or leasing the same,
an adhesive stamp prepared and issued by this
Department."

The constitutionality of the so-called Texas
Bedding Law, i.e., Article 4476a depends upon whether
or not it is a valid exercise of the police power of
the State of Texas through its law-making body.

The Supreme Court of the State defines "police
power" in the case of SPANN v. CITY OF DALLAS, 235 S.W.
513, Phillips, Chief Justice, as follows:

"The police power is a grant of authority
from the people to their governmental agents
for the protection of the health, the safety,
the comfort and the welfare of the public. In
its nature it is braod and comprehensive. It
is a necessary and salutary power, since with-
out it society would be at the mercy of individ-
ual interest and there would exist neither
public order nor security."

The court, after stating that the public health,
the public safety, and the public comfort are objects of
such importance that private rights, under reasonable
laws, must yield to their security, alludes to the re-
quirement of "real or substantial relation" of the parti-
cular statute to the objects of the police power.

" * * * A law which assumes to be a police
regulation but deprives the citizen of the use

Hon. Boyet Stevens and Hon. Geo. E. French, page 5

of his property under the pretense of preserving the public health, safety, comfort or welfare, when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages."

It is apparent that inherent and plenary as the police power is, still it has its restrictions. Not only must the law enacted be reasonable and the means adopted therein have a substantial relation to the end, but the following provisions of the United States and Texas Constitutions must not be violated:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Sec. 1, Art. 14, Constitution of the United States.

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Sec. 19, Bill of Rights, Constitution of the State of Texas.

The courts will not pass upon the wisdom of an act concerning the exercise of the police power, but they will pass upon the question whether or not such act has a substantial relation to the police power. It must have some relation and be adapted to the ends sought to be accomplished.

MUGLER v. KANSAS, 123 U.S. 623, 8. Sup. Ct. 273; CHICAGO, BURLINGTON & QUINCY RAILWAY CO. v. ILLINOIS, 200 U.S. 561, 26 Sup. Ct. 341.

The Texas Bedding Law is first and foremost a health regulatory measure.

Section 5 reads:

"The State Board of Health is hereby charg-
ed with the enforcement of this Act for the
protection of health and to prevent the spread
of disease. It is further empowered, and the
duty shall be to make, amend, alter or repeal
general rules and regulations of procedure for
carrying into effect all the provisions of this
Act, and to prescribe means, methods, and
practices to make effective such provisions."

It was enacted by the Legislature in the inter-
est of the welfare of the people of the state.

In his able article on "Due Process of Law,
Police Power, and the Supreme Court," page 94, Volume 2,
"Selected Essays on Constitutional Law," Ray A. Brown
writes:

"While it might seem that the question of
what the welfare of the people demand should
be left to the Legislature, the Court has al-
ways reserved to itself the power of deciding
whether a given statute 'is to be accepted as
a legitimate exertion of the police power of
the state' and has said that if the statute has
'no real or substantial relation' to the objects
of that power or 'is a palpable invasion of
rights secured by the fundamental law, it is
the duty of the Courts to so adjudge, and there-
by give effect to the Constitution'. In this
formula three separate requirements are laid
down: (1) the object of the Legislature must be
permissible, (2) the means must have a substan-
tial relation to the end, and (3) fundamental
rights must not be infringed. Later cases have
added the further qualification that the law
in question must not be arbitrary, unreasonable
or oppressive."

Reviewing the provisions of the Bedding Law
with the object of applying the above enumerated stand-
ards, we find a law passed ostensibly for safe guarding
health which regulates the manufacturing, repairing and

Hon. Boyet Stevens and Hon. Geo. E. French, page 7

renovating, and selling of bedding, i.e., "mattresses, pillows, bolsters, feather beds and other filled bedding of any description," (Sec. 1 (a) of Article 4476a) in the following ways:

1. requiring "a substantial white cloth tag" bearing specific information on all bedding manufactured for original sale or resale,

2. requiring germicidal treatment of all secondhand material,

3. requiring a permit of all persons engaged in the business of manufacturing, repairing or renovating bedding or applying a germicidal process,

4. requiring the affixation of stamps procured from Board of Health to the "white cloth tag" on all bedding,

5. prohibiting any person from manufacturing, repairing or renovating into bedding or batting discarded materials obtained from dump-grounds, junk yards, or hospitals within or without the State of Texas.

Bedding undoubtedly is related to the public health and comfort, and any reasonable regulation of the manufacture, renovation and selling of bedding for sanitary purposes would be a means having a substantial relation to the end sought to be accomplished, namely, the protection of the public health.

The requirement of a permit or license to engage in a business or occupation is one of the oldest and most universally recognized forms of valid police regulation.

27 TEX. JUR. 879

"The statutes require a license to be obtained or an occupation tax to be paid in connection with the enjoyment of certain privileges

Hon. Boyet Stevens and Hon. Geo. E. French, page 8

and the pursuit of a variety of businesses, callings and occupations."

KARR v. BALDWIN, 57 Fed. (2d) 252;
BRAND v. STATE, 109 Crim. Rep. 96,33.W. (2d) 439;
GERARD v. SMITH (Civ. App.) 52 S.W. (2d) 347.

The requirement of tags and stamps is not an excessive exercise of legislative power. The tag containing information for the purchase is a public protection and a stamp excise tax is a permissible method of raising revenue for the enforcement of the Act.

STEINER, ET AL v. RAY, ET AL, 84 Ala. 93, 4 So. 172 (See Supreme Court):

"The case seems to have gone off mainly on the failure to have tags attached to the packaged * * *. We have said that the purpose of the statute was to create and furnish evidence of a guaranty of the chemical ingredients of the fertilizer sold. This the statute requires to be done by attaching tags to the several packages."

"As we understand the statute, its controlling purpose was to guard the agricultural public against spurious and worthless compounds sometimes sold as fertilizers; to fix on sellers a statutory guaranty that fertilizers sold by them contain the chemical ingredients, and in the proportions, represented; and to furnish to buyers cheap and reliable means of proving the deception and fraud should such be attempted. The accomplishment of these objects will greatly promote the prosperity and success of agricultural industry, and we do not hesitate to declare that they are strictly within the pale of legitimate police regulation."

BROWN v. ADAIR, 104 Ala. 652, 16 S. 439 (tag);
MCCHRISTY v. STATE, 112 S.W. (2d) 187;
HINTON v. STATE, 116 S.W. (2d) 391;
U.S. v. AMERICAN CHICLE CO. 65 L. Ed. 1041, 256 U.S. 446;

Hon. Boyet Stevens and Hon. Geo. E. French, page 9

61 CORPUS JURIS, 243 Stamp Tax on Document
  Excise Tax;
PEOPLE v. REARDON, 184 N.Y. 431, 77 N.E. 970,
  8 L.R.A. N.S., 314 and footnote;
NICOL v. AMES, 173 U.S. 509, 43 L. Ed. 786;
See 33 CORPUS JURIS 321 and cases cited.

The subjection of secondhand materials to germi-
cidal treatment is a proper police regulation. See -

WEAVER v. PALMER BROS. CO., 217 U.S. 402;
PEOPLE v. WEINER, 271 Illinois 74, 110 N.E.
  870;
TOWN OF GREENSBORO v. EHRENREICH, 80 Ala. 579,
  2 So. 725.

Finally, the question arises as to whether or not
the prohibition contained in Section 3 against the man-
ufacturing, repairing or renovating into bedding or bat-
ting, using discarded materials obtained from dump-grounds,
junk-yards, or hospitals within or without the State of
Texas is an infringement of fundamental rights under Sec.
19 of the Texas Bill of Rights and the 14th Amendment
to the Federal Constitution.

There are several cases which merit consideration
in this respect.

The Supreme Court of the United States in the case
of WEAVER v. PALMER BROS. CO., supra, held the following
Pennsylvania statute prohibiting the use of shoddy, new
or old, even when sterilized, in the manufacture of com-
fortables for beds, unconstitutional on the grounds of its
being unreasonable and arbitrary and a deprivation of
due process of law to manufacturers:

"No person shall employ or use in the making,
remaking, or renovating of any mattress, pillow,
bolster, feather bed, comfortable, cushion or
article of upholstered furniture: (a) any mater-
ial known as 'shoddy', or any fabric or material
from which 'shoddy' is constructed: (b) any
secondhand material, unless, since last used,
such secondhand material has been thoroughly
sterilized and disinfected by a reasonable proc-

Hon. Boyet Stevens and Hon. Geo. E. French, page 10

ess approved by the Commission of Labor and Industry; (c) any new or secondhand feathers, unless such new or secondhand feathers have been sterilized and disinfected by a reasonable process approved by the Commission of Labor and Industry." (Laws, 1923, p. 803, Sec. 2).

Quoting the decision in two instances:

"There was no evidence that any sickness or disease was ever caused by the use of shoddy, and the record contains persuasive evidence, and by citation discloses the opinions of scientists eminent in fields related to public health that the transmission of disease-producing bacteria is almost entirely by immediate contact with, or close proximity to, infected persons; that such bacteria perish rapidly when separated from human or animal organism: and that there is no probability that such bacteria or vermin likely to carry them survive after the period usually required for the gathering of the materials, the production of shoddy, and the manufacture and the shipping of comfortables. This evidence tends strongly to show that in the absence of sterilization or disinfection there would be little, if any, danger to the health of the users of comfortables filled with shoddy, new or secondhand, and confirms the conclusion that all danger from the use of shoddy may be eliminated by sterilization."

"Many states have enacted laws to regulate bedding for the protection of health. Legislation in Illinois (Laws 1915, p. 575) went beyond mere regulation and prohibited the sale of secondhand quilts or comfortables even when sterilized or when remade from sterilized secondhand materials. In PEOPLE v. WEINER, 271 Ill. 74, L.R.A., 1916, 775, 110 N.E. 870, Annotated Case 1917C, 1065, the state supreme court held that to prohibit the use of material not inherently dangerous and that might be rendered safe by reasonable regulation transgresses the constitutional protection of personal and property rights."

The Texas Bedding Law is easily distinguishable from the Pennsylvania law passed on in the case of WEAVER v. PALMER BROS. CO., supra. In the latter statute the use of any "shoddy" sterilized or unsterilized, was forbidden. The Texas law only bars materials obtained from dump-ground, junk-yards, or hospitals, i.e., material which is inherently dangerous from a sanitary point of view. It specifies the materials which may not be used and limits them to discarded materials outside the pale of sanitation. It is not unreasonable, arbitrary or capricious to prohibit the use of materials from dump-grounds, junk-yard or hospitals, since the probabilities are that they cannot be rendered safe by reasonable regulation.

It is interesting to note that Justice Holmes wrote a dissenting opinion in the WEAVER v. PALMER BROS. CO. case, discussed above, in which dissenting opinion Mr. Justice Brandeis and Mr. Justice Stone concurred. Mr. Justice Holmes wrote:

"The Legislature may have been of opinion further that the actual practice of filling comfortables with unsterilized shoddy gathered from filthy floors was widespread, and this again we must assume to be true. It is admitted to be impossible to distinguish the innocent from the infected product in any practicable way, when it is made up into the comfortables. On these premises, if the Legislature regarded the danger as very great and inspection and tagging as inadequate remedies, it seems to me that in order to prevent the spread of disease it constitutionally could forbid any use of shoddy for bedding and upholstery." (Underscoring ours).

In the case of PEOPLE v. WEINER, 271 Ill. 74, 110 N.E. 870, the Supreme Court of Illinois declared unconstitutional Act dated July 1, 1915 (Illinois Laws 1915, p. 575) prohibiting the use of cotton or other material made secondhand by use about the person in the making of mattresses, quilts, or bed comforters, and the sale of mattresses.

The Court stated:

Hon. Boyet Stevens and Hon. Geo. R. French, page 12

" * * * It is eminently proper to require
that material be free from germs of contagion
and infection before being used in mattresses,
comforters or quilts, whether the material be
secondhand or new, but the possible danger to
health or safety does not justify the absolute
prohibition of a useful industry or practice
where the danger can be dealt with by regula-
tion. * * * It is argued by the state that
laws similar to this have been passed in other
jurisdictions in this country, but so far as
we are advised, the highest courts of those var-
ious states have not passed on the constitution-
ality of any of those acts. Indeed, the wording
in most of those statutes is so very different
that any ruling as to them would be of very lit-
tle assistance in this case. A city ordinance
very similar in some respects to this statute
was held unconstitutional by the Supreme Court
of Alabama in Town of Greensboro v. Ehrenreich,
supra."

The Illinois statute contained a blanket prohibi-
tion of secondhand material whereas the Texas Statute
authorizes its use, but requires it to be subject to
germicidal treatment, a form of regulation expressly
sanctioned by the Illinois Supreme Court.

In the case of TOWN OF GREENSBORO v. EHRENREICH,
80 Ala. 579, 2 So. 725, the Supreme Court of Alabama
struck down a city ordinance making it "unlawful for any
person to import, sell, or otherwise deal in secondhand
or cast-off garments, blankets, bedding or bed-clothes
in said town", excepting from the effect of said Act ar-
ticles not imported, and not used by persons having in-
fectious diseases.

The reasoning of the court in declaring the Greens-
boro Ordinance unconstitutional tends to support such a
bedding law as we have before us:

"The professed object of the ordinance, as
shown by the preamble reciting the recommenda-
tion of the officers and members of the Board
of Health, is to protect the health of the com-

Hon. Boyet Stevens and Hon. Geo. K. French, page 13

munity. While, unquestionably, the municipal government may pass sanitary ordinances for the preservation of health within its limits; may prevent articles of merchandise or others which have been used by persons or in places infected with contagious disease from being brought into town, may establish quarantine and reasonable inspection regulations; and provide for disinfecting or destroying, the germs of disease as far as practicable, and, it may be, for obtaining satisfactory assurance that such articles have not been exposed to an infectious or contagious disease, - the power cannot be carried beyond what is necessary for protection. It will not be controverted that secondhand or cast-off garments, bblankets, bedding, and bed-clothes are not per sese introductive of infectious or contagious diseases, and that a lawful business in selling or dealing in them may be carried on without danger to the public health. They become dangerous by reason of the nature of previous use, condition, or exposure. This is virtually admitted by the proviso to the ordinance, which excepts from its operation the sale of the specified articles not imported, and that have not been used by a person having an infectious disease. The operation of the ordinance reaches beyond the scope of necessary protection and prevention into the domain of restraint of lawful trade, by permanently prohibiting the importation, selling or otherwise dealing in the enumerated articles, though they may not have been used by persons or in districts infected with such diseases * * * "

Materials from dump-grounds, junk-yards or hospitals, to use the language of the opinion, are certainly "articles of merchandise or others which have been used by persons or in places infected with contagious diseases," "articles * * * exposed to an infectious or contagious disease," "dangerous by reason of the nature of previous use, condition, or exposure," "used by persons or in districts infected with such diseases."

We find that Article 4476a is a regulatory enactment within the constitutional limitations of the state's

Hon. Boyet Stevens and Hon. Geo. K. French, page 14

police power, designed to promote the health, comfort, and welfare of the public. The provisions of the Act are not unreasonable, arbitrary, or capricious, but have a substantial relation to the objective of safeguarding the public health. On the other hand, the restrictions and regulations of the Act are within proper limits and in no way impair any fundamental rights of every person to pursue a lawful business or occupation and to use and enjoy his private property by any reasonable and proper method. The bedding business is subject to regulation under the police power, and the Texas Bedding Law does not amount to an exercise of the police power incommensurate with the duty and obligation of the Legislature to provide for the people in their health, safety, comfort, and is not inconsistent with private property rights.

An enactment under the police power of the state must be upheld "unless * * * a rational and fair man necessarily would admit that the statute proposed would infringe fundamental principles as they have been understood by the traditions of our people and our law." HOLMES JUSTICE DISSENTING IN LOCKNER v. NEW YORK, 198 U.S. 45, 76 (1905). We find no violation of the 14th Amendment to the Federal Constitution or to Article 19 of the Texas Bill of Right in Senate Bill 200, i.e., Article 4476a.

In answer to your first question, it is our opinion that Senate Bill 200, Acts of the 46th Legislature, (Article 4476a, Vernon's Annotated Civil Statutes) is constitutional.

As for question number two, we have given the facts thorough consideration and it is our opinion that the individual named therein would be obliged to comply with Section 6(a) of the Act to the extent of obtaining a permit from the State Board of Health, but since the bedding he renovates is that of the owner and the work is done on the premises of the owner who furnishes the material and is in a position to supervise and observe all phases of the job, we find nothing in the statute which would require that the renovater establish a permanent place of business for himself or cease the type

Hon. Boyet Stevens and Hon. Geo. E. French, page 15

of work he is doing. There is no sale involved. There is no opportunity for the renovator to pass off on the owner any misrepresented materials. The use of the words "repairing or renovating" in Sec. 6(a) of Article 4476a impels us to this decision.

There is nothing in the statement of facts submitted to indicate whether or not the individual under consideration is applying a germicidal process in his work on the owner's premises. If this is the case, he must comply with Sec. 6(b) as well as 6(a).

The Bedding Act is not exclusively subject to a construction which will impair its constitutionality. When there are two possible interpretations which may be placed upon a law, the courts will adopt that construction which most likely carries out the intention of the Legislature and which accords with reason. It is our opinion that the itinerant renovator will have complied with the Act sufficiently insofar as it concerns him if he obtains a permit and exhibits it on his trailer. We point out that the facts presented show that he is not in any way manufacturing bedding or selling it, but is simply renovating the owner's bedding on the owner's premises. It is not necessary to adopt a construction of this law which would deprive this individual of his means of livelihood and in all probability be an invasion of his fundamental rights.

Trusting that we have fully answered your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Dick Stout
Assistant

DS:ob

APPROVED OCT 25, 1939

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE